[No. 549-1.    Division Three.    October 12, 1971.]

MAUK SEATTLE LUMBER COMPANY, *Respondent*, v. HOQUIAM
PLYWOOD COMPANY, INC., *Appellant*.

*Hay, Epstein & Young* and *John L. Hay,* for appellant.

*Casey & Pruzan* and *John F. Kovarik,* for respondent.

GREEN, J.—This is an action for indemnity brought by
plaintiff, Mauk Seattle Lumber Company, against defend-
ant, Hoquiam Plywood Company, Inc. Defendant appeals
from a judgment in favor of plaintiff.

Plaintiff entered into a contract with Alcan Pacific Co. to
supply 1,856 sheets of grooved plywood siding. The siding
was required by Alcan under its contract with the United
States for construction of certain housing units at Fort
Greeley, Alaska. Plaintiff in turn ordered the plywood from
the defendant. Shifton Plywood did the grooving, inasmuch
as defendant was not equipped to do so.

The order was shipped to Alcan and approximately 1,300
sheets were rejected by the United States because they did
not meet contract specifications. Representatives of Alcan,
plaintiff and defendant met in Alaska to review the situa-
tion. The trial judge found defendant agreed to supply a
replacement shipment to conform to specifications. Defend-
ant challenges this finding on appeal. It is not disputed

plaintiff gave defendant the wrong specifications on the original shipment; however, plaintiff and Alcan settled the damages arising therefrom.

Defendant supplied the replacement shipment consisting of 1,313 sheets of plywood. At the time the grooving was done by Shifton, plaintiff's attention was called to the fact this proposed shipment did not appear to meet government specifications. Because of the necessity of getting the plywood to Alcan and to mitigate any damages that might flow from the failure to make timely delivery, plaintiff shipped the plywood, anticipating Alcan could make use of a substantial portion of it. Alcan accepted 703 sheets and rejected 610. Plaintiff replaced the rejects from sources other than defendant.

Thereafter, Alcan brought an action in the United States District Court for Alaska for damages caused by plaintiff's failure to timely deliver plywood according to specifications. Plaintiff gave notice to defendant of the Alaska proceeding. Defendant elected not to participate in it. A substantial judgment was entered for Alcan against plaintiff and, in this proceeding, plaintiff seeks to be indemnified for that judgment.

First, defendant assigns error to the findings and conclusions of the trial court that (1) defendant agreed to supply a replacement shipment according to specifications, and (2) the Alaska judgment in favor of Alcan was caused by defendant's action in providing a defective replacement of 1,300 sheets of plywood. All of these matters and others were extensively argued to the trial judge on conflicting evidence. The trial judge held against the defendant. We have carefully reviewed the entire record and conclude the findings are amply supported by the evidence. We will not substitute our findings for those of the trial court in such circumstance. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Next, error is assigned to the trial court's conclusion that defendant should indemnify plaintiff for the Alaska judgment. The rule of indemnity in this type of

proceeding, defendant properly contends, is stated in *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955), at 242:

> It is the general rule that there is no right of indemnity between joint tort-feasors. *Duncan v. Judge,* 43 Wn. (2d) 836, 264 P. (2d) 865. However, if the tort-feasors are not *in pari delicto,* and the negligence of one is primary or active, and the negligence of the other is passive, resulting in injury to a third person, and the one guilty of passive negligence is required to answer in damages to the third person, he is entitled to indemnity from the wrongdoer guilty of primary negligence.

Defendant argues that plaintiff was actively negligent and by reason thereof is not entitled to indemnity. In support of this position, defendant contends that plaintiff initially gave the wrong specifications to defendant; received preliminary notice from Alcan that the initial shipment did not meet specifications but waited until formal rejection about a month later before undertaking any action; allowed defendant to provide the replacement order when plaintiff knew defendant's machinery was not able to produce plywood that would meet specifications; sent the replacement shipment to Alcan knowing it contained defective panels; failed to sort the good panels from the bad before making the replacement shipment; failed to notify defendant the shipment was defective and to immediately attempt to replace the defective panels from other sources; waited approximately 1 month before attempting to secure replacement of the defective panels in the second shipment; sent another shipment in August that was partially defective and thus required a fourth shipment in September to complete the initial order; and plaintiff failed to send the initial replacement shipment by speedier means than water transport.

In the context of the circumstances exhibited by the record, we are unable to agree plaintiff's alleged actions constituted primary or active negligence that would bar a recovery for indemnity. The initial shipment was settled between plaintiff and Alcan and no portion of the Alaska judgment involved damages arising out of that shipment.

While the record is in conflict, there is substantial evidence to support the trial court's conclusion that defendant's representative while in Alaska learned of the government specifications and agreed to replace the defective panels. There is also substantial evidence supporting the court's finding it was emergent for the replacement shipment to be sent to Alcan as soon as possible so Alcan could install the panels before winter. Consequently, when plaintiff received the replacement shipment and discovered defective panels, it was not unreasonable to ship the panels to Alcan in the hope they could use a substantial portion of the shipment, thus mitigating damages. The findings in the Alaska proceeding indicate the sending of this replacement shipment, although partially defective, did in fact mitigate the damages. It was not unreasonable, under the evidence, for plaintiff to await the determination of the number of panels that were acceptable to Alcan before seeking to replace the defective panels. Whether hindsight may have dictated a different method of procedure is questionable under the evidence. Therefore, we cannot say the trial court was in error in construing the evidence to the end that plaintiff's actions were found reasonable and passive in nature. The allowance of indemnity was proper.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.