Frank **HOWEY**, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant and Third-Party Plaintiff-Appellant,

v.

**RADIO CORPORATION OF AMERICA**, Third-Party Defendant-Appellee,

v.

**UNIVERSAL SERVICES, INC.,** Third-Party Defendant-Appellee.

No. 71–2384.

United States Court of Appeals, Ninth Circuit.

July 3, 1973.

As Modified July 30, 1973.

**1188**

Ronald R. Glancy (argued), Dept. of Justice, Civil Div., Washington, D.C., E. Grey Lewis, Acting Asst. Atty. Gen., G. Kent Edwards, U. S. Atty., Anchorage, Alaska, Morton Hollander, Kathryn J. Baldwin, Atty., Dept. of Justice, Civil Div., Washington, D.C. for appellant.

Richard O. Gantz (argued), of Hughes, Thorsness, Lowe, Gantz & Clark, Jesse C. Bell (argued), of Atkinson, Wade, Conway & Young, Anchorage, Alaska, for appellees.

Before LUMBARD,* BROWNING, and DUNIWAY, Circuit Judges.

LUMBARD, Circuit Judge:

Frank Howey sued the United States pursuant to the Federal Tort Claims Act in the United States District Court for Alaska. Judge James A. von der Heydt, sitting without a jury awarded him damages of $622,617.64. After the trial the government and Howey settled for $250,000. However, before the trial the government had filed third party complaints against Radio Corporation of America (RCA) and Universal Services, Inc. (Universal Services) for indemnification. On the second day of the trial, which commenced on November 2, 1971, and before any witnesses were called, the government moved for leave to amend its third party complaint against RCA. The motion was denied. After the trial the district court held that the government was not entitled to indemnification from Universal Services, or from RCA under the government's original third party complaint. The government appeals only from the adverse rulings concerning the third party defendants.

The accident giving rise to Howey's claim occurred on March 15, 1965 at a government owned communication facility in Aniak, Alaska. This site was part of the overall White Alice communications system operated throughout Alaska. There are about 40 sites similar to the one at Aniak. The facility had been constructed by a contractor pursuant to an Air Force contract, and accepted by the government in 1956. After accepting the site the government contracted with Federal Electric Corporation to operate the facility. Beginning in 1962 RCA began to operate White Alice sites pursuant to a contract with the government. At the time of the accident, RCA had between 400 and 500 employees operating the White Alice system. According to the contract between RCA and the government, RCA assumed the responsibility for the custody, operation, and maintenance of the communication sites. The government owned the sites,

---

* The Honorable J. Edward Lumbard, Senior Circuit Judge for the Second Circuit Court of Appeals, sitting by designation.

but the daily operational control of the premises was vested in RCA. RCA had entered into a subcontract with Universal Services, who agreed to supply personnel to RCA for the operation of the facility. Howey was one of those assigned by Universal Services to work for RCA.

Federal Aviation Administration regulations required the antenna towers at the Aniak facility to be illuminated by red lights. On March 14, 1965 the plaintiff was ordered by his supervisor, an RCA employee, to replace one of the antenna lights. The antenna tower was not properly constructed in that one climbing the tower to replace a light could not utilize adequate safety devices. A person ascending to the antenna lights was required to cross on a six inch angle iron beam without guide or guardrails. Because of this unsafe condition personnel in changing the lights used an alternative route by scaling the back of the antenna. On March 15, 1965, Howey after climbing the tower and attempting to change the light, slipped while descending and fell some ten feet, landing on a platform located below the antenna lights. The district judge found that Howey had suffered back injuries and contusions, and later developed a psychiatric reaction to the fall. He further concluded that this accident rendered him totally and permanently disabled from gainful employment.

Howey sued both the United States and RCA in separate actions. The plaintiff and RCA settled their dispute before the instant case against the government came to trial. In Howey's action against the United States, the latter filed third party complaints against RCA and Universal Services. The pertinent part of the third party complaint against RCA, filed on November 10, 1966, stated:

> Defendant, UNITED STATES OF AMERICA, is entitled to recover from RADIO CORPORATION OF AMERICA, all or part of what Plaintiff FRANK W. HOWEY may recover from the UNITED STATES OF AMERICA in that RADIO CORPORATION OF AMERICA agreed in a maintenance contract with the UNITED STATES OF AMERICA to maintain comprehensive general liability (bodily injury) insurance to cover such injuries as alleged by Plaintiff.

On the second day of trial the government moved for leave to amend this third party complaint against RCA to allege specifically a claim for contractual and common law indemnity and/or contribution.[1] Leave to amend was denied, and the district court limited its consideration of the government's rights against RCA to RCA's compliance with its contractual obligation to procure and maintain comprehensive liability insurance. On this claim the trial court found in favor of RCA.

The government's third party complaint against Universal Services was likewise dismissed. The government sought indemnity from Universal Services based on the following clause of the

---

1. In addition to RCA's alleged liability to the United States pursuant to the insurance provision of the contract, the amended third party complaint asserted that RCA was guilty of specific acts of negligence which proximately, immediately and directly caused plaintiff's injuries. These alleged negligent acts or omissions included: RCA's failure to take reasonable steps to assure the use by the plaintiff of safety belts, harnesses and lines; RCA failed to adopt policies and regulations or take steps needed to reasonably obtain compliance by its employees including the plaintiff in the performance of their duties under the contract; that on June 3, 1964, RCA was informed by one of its employees of the condition which caused the plaintiff's injuries, and failed to take steps to correct the condition; RCA knowing of the dangerous condition directed the plaintiff to expose himself to that condition and thereby causing his injuries; and that RCA failed to ascertain on March 15, 1965 whether additional conditions on the antenna in question existed due to inclement weather creating a further hazard to personnel engaged in climbing the antenna.

subcontract between RCA and Universal Services:

> Subcontractor agrees to hold RCA and the Government safe and harmless from any and all claims of whatever nature which may arise as a result of Subcontractor performance hereunder, forever.

## I

The first issue is whether the district court abused its discretion in refusing to permit the government to amend its third party complaint against RCA. In light of the strong policy to permit the amending of pleadings, we conclude that the district court did abuse its discretion.

■ The Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R. Civ.P., by freely granting leave to amend when justice so requires. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); United States v. Hougham, 364 U.S. 310, 81 S.Ct. 13, 5 L. Ed.2d 8 (1960). The purpose of pleadings is "to facilitate a proper decision on the merits," Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), and not to erect formal and burdensome impediments in the litigation process. Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint. See United States v. Hougham, supra; Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380 (2d Cir. 1968); Breier v. Northern California Bowling Proprietors' Ass'n., 316 F.2d 787 (9th Cir. 1963); 3 Moore's Federal Practice, § 15.08.

In sustaining RCA's objection to an amendment of the complaint, the district judge did not speak in terms of undue prejudice to RCA. Rather he simply observed that the motion to amend, coming several years after the case had been set down for trial, was not a timely filing of an amendment to a third party complaint. After the trial the judge denied the government's motion for a new trial and noted:

> The Government was unable to establish any reason or excuse for its neglect in failing to bring a timely motion to amend its complaint. The amendment sought was one of considerable substance. The granting of defendant's motion to amend after commencement of trial would have severely prejudiced defendant RCA. It appeared impossible for RCA to prepare a defense during the course of the trial to the government's newly asserted claim. The only alternative available was to continue an overdue trial in progress, the witnesses and all parties in attendance.

■ Several factors are usually used as criteria to determine the propriety of a motion for leave to amend. These criteria include undue delay, bad faith, futility of amendment, and prejudice to the opposing party. While all these factors are relevant, the crucial factor is the resulting prejudice to the opposing party.

■ The government's motion to amend should have been granted as there was no showing that RCA would have been prejudiced thereby. While it is true that the motion was made five years after the third party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend.[2] Where there is a lack of preju-

---

**2.** This circuit's decision in Komie v. Buehler Corp., 449 F.2d 644 (9th Cir. 1971), upholding a lower court's decision not to grant leave to amend indeed stressed the tardiness of the motion. However, prejudice to the opposing party was evident. There an employer moved to amend his answer to deny the existence of an agency relationship between the employer and a driver of the employer's boat. In the employer's original answer he admitted that the boat was operated by his agent-Bechtel. This was done again in his "Uncontested Facts Deemed Material." Clearly the party opposing the amendment would have been prejudiced by permitting the employer now to litigate an issue he had expressly conceded years ago. The situation in the instant case is not comparable.

dice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion. The purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial policy. Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading.

■ Here the trial judge did not find, and there is no allegation that the government's motion was made in bad faith even though the government gave no reason for its lengthy delay. We discern from the record that the district judge placed great weight on delay as a factor in his decision, and placed upon the government the burden of establishing a reason for the delay. We agree with the Second and Eighth Circuits that the mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend. See Hanson v. Hunt Oil Co., 398 F.2d 578 (8th Cir. 1968); Middle Atlantic Utilities Co. v. S.C.W. Development Corp., 392 F.2d 380 (2nd Cir. 1968).[3]

The record fails to show any basis for finding that the proferred amendment would have unduly prejudiced RCA. The finding of prejudice made after the trial, and not when the motion was originally denied, was phrased in conclusory language, except for the additional assertion that "(i)t appeared impossible for RCA to prepare a defense during the course of the trial to the government's newly asserted claim."

On the contrary, the history of the litigation shows that RCA was fully prepared to litigate the substantive issues raised by the amended third party complaint. RCA had participated in litigation arising from the accident from the outset. Howey had sued RCA for negligence. RCA's preparation of a defense against plaintiff's claims necessarily included a factual and legal investigation covering the same area which would be explored by RCA in defending against the amended third party complaint. Furthermore, RCA participated in discovery.[4] The company submitted in 1967 a pretrial memorandum which included a list of prospective witnesses, a list of contested legal and factual issues, and a memorandum of law. The contested issues and the memorandum are similar, if not identical, to ones RCA would have submitted in the third party dispute pursuant to the proposed amended complaint. Thus, RCA was prepared to contest the indemnification issues raised in the United States' proposed amended complaint. At a minimum the trial judge should have inquired as to whether further discovery was still needed. If extensive discovery was still needed, then the court's denial of the government's motion for leave to amend might have been correct.

Moreover, the existence of the original third party complaint seeking to hold RCA liable to the government for all or part of what the plaintiff might recover from the United States at a minimum placed RCA on notice that the government was seeking a form of indemnification from RCA. By its proposed amended complaint, the government asked the court to consider its common law and other contractual rights to in-

---

3. "The mere fact that an amendment is offered late in the case is, however, not enough to bar it; amendments may be offered at the trial, or even after reversal and remand." 3 Moore's Federal Practice, § 15.08, 0.835.

4. RCA admitted in its brief that it has participated in discovery and had prepared for trial. The record on appeal further indicates RCA's participation in discovery. The record shows evidence of interrogatories, request for admissions, notice of depositions, and pretrial memoranda.

demnification as an additional basis for its substantive claim to relief.

■ This decision, of course, does not intimate any opinion as to the disposition of the indemnification issue.[5] We only believe that the United States, like any other party to a civil suit, is entitled to a hearing on a possibly meritorious claim. In the absence of any showing of improper prejudice to RCA, or bad faith by the government, it was an abuse of discretion to deny the motion for leave to amend.[6]

## II

■ The district court acted properly in its disposition of the government's third party complaint against Universal Services. The contractual provision that the "subcontractor agrees to hold RCA and the government safe and harmless from any and all claims of whatever nature which may arise as a result of subcontractor performance thereunder" did not include and was not intended to include and "hold harmless" provisions for acts of negligence by the United States.

■ In a Federal Tort Claims Act suit, the Supreme Court recently articulated the following rule for construing alleged indemnification clauses:

a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. United States v. Seckinger, 397 U.S. 203, 211, 90 S. Ct. 880, 885, 25 L.Ed.2d 224 (1970).

A court should not permit a non-negligent party to indemnify the negligent party unless the contract evinces in unequivocal terms the parties intention to

reach such a result. See 41 Am.Jur.2d Indemnity, § 15 (1968). In fact, this court has intimated that in certain contexts an arrangement requiring indemnification for the negligent acts of another might be invalid and unenforceable as against public policy. Northwest Airlines, Inc. v. Alaska Airlines, Inc., 351 F.2d 253 (9th Cir. 1965), cert. denied, 383 U.S. 936, 86 S.Ct. 1068, 15 L. Ed.2d 853 (1966). We need not decide here whether the disputed clause violated public policy, since we reject the government's preferred interpretation of that provision.

The contractual provision in dispute does not express a clear intent to require Universal Services to indemnify the government for the latter's, or a third party's, negligence. The word "indemnify" commonly used to express the legal relationship the government seeks to establish vis-a-vis Universal Services is lacking. The relevant language is contained in the contract under the heading "Insurance-Liability to Third Persons." Universal Services procured the insurance required by the clause, and the coverage was approved as to type, form, and amount by the government. The placement of this controversial clause in the insurance section of the contract supports Universal Services' assertion that the phrase "safe and harmless" applied only if the proper insurance was not procured.

The disputed clause could be given other interpretations. The parties may have intended it to mean that Universal Services would not seek indemnity from the government or RCA, or that if Universal's own employees caused physical or property damage, Universal Services would be liable for the losses suffered. Furthermore, Universal Services con-

---

5. We do note, however, that Alaska law apparently bars contribution. See Alaska Code of Civ.Proc. § 09.16.010.

6. This disposition of the first issue raised by the government makes unnecessary any discussion of the government's alternative

assignment of error as to its claim against RCA. This argument contended that the district court erred in failing to consider the original third party complaint as a claim for indemnification against RCA, and for dismissing the third party complaint with prejudice.

tends that the clause should be read to hold it liable if a plaintiff's injuries arise "as a result of subcontractor performance." The injury here was caused by the performance of the government, RCA, or the original builder of the site. It did not arise from the subcontractor's performance. We need not offer an authoritative interpretation of this contract clause. These alternative constructions support the view that, contrary to the government's position, the clause in question can be given a realistic meaning without adopting the government's broad interpretation.

Additionally, this is not a case where both the potential indemnitor and the indemnitee were negligent. See United States v. Seckinger, 397 U.S. 203, 90 S. Ct. 880, 25 L.Ed.2d 224 (1970); Unitec Corp. v. Beatty Safeway Scaffold Co., 358 F.2d 470 (9th Cir. 1965). The findings of fact and conclusions of law made below amply justify the conclusion that Universal Services was innocent of any negligence leading to the plaintiff's accident. Universal Services had no actual or constructive knowledge of the dangerous condition at the site. The dangerous condition was in fact created before Universal Services entered into the contract with RCA.

We thus concur with the view adopted by the district court that the potential indemnitee has failed to prove that the clear intent of the parties was to hold an innocent subcontractor liable for the negligent acts of those who were in the best position to exercise the proper care needed to prevent this tragic accident.

Accordingly, we reverse the judgment dismissing the government's third party complaint against RCA, and remand the case for a new trial on the government's proposed amended complaint. We affirm the district court's disposition of the government's third party action against Universal Services.

Affirmed in part; reversed in part and remanded.