**GREEN CONSTRUCTION COMPANY, Hoak Construction Company and Green Construction Company-Hoak Construction Company, joint venture, Plaintiffs,**

v.

**WILLIAMS FORM ENGINEERING CORPORATION and Gibralter Cement Products, Inc., Defendants.**

**WILLIAMS FORM ENGINEERING CORPORATION, Third-Party Plaintiff,**

v.

**UNITED STATES of America and United States Army Corps of Engineers, Third-Party Defendants.**

No. G75–248 CA1.

United States District Court,
W. D. Michigan, S. D.

Sept. 10, 1980.

Harold M. Street, Muskegon, Mich., Robert E. Dreher, James L. Sayre, Des Moines, Iowa, for plaintiffs.

Thomas J. McNamara, Grand Rapids, Mich., for Williams Form Engineering Corp.

Wilber M. Brucker, Jr., Detroit, Mich., Sam F. Massie, Jr., Grand Rapids, Mich., for Gibralter Cement Products.

Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., for the Government.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

This is a products liability action, founded in diversity, for damages sustained in 1972 when grout manufactured and sold by defendants allegedly deteriorated after use on a government construction project in Alaska. Plaintiffs Green Construction Company, Hoak Construction Company, and a joint venture, Green Construction Company-Hoak Construction Company (hereinafter Green-Hoak), were awarded a contract by the U. S. Army Corps of Engineers for the construction of transmission towers along a line extending from Juneau, Alaska, to the Snettisham Hydro Electric Station, approximately 28 miles southeast of Juneau. This contract was known as the Snettisham Project. In constructing the towers, Green-Hoak used Wil-Kwik-Set grout, a product manufactured by defendant Gibralter Cement Products, Inc. (Gibralter) and sold by Williams Form Engineering Corporation (Williams Form). Wil-Kwik-Set allegedly was defective and the Corps of Engineers ordered Green-Hoak to replace the product and make repairs, which the contractors did. Plaintiffs filed suit against Williams Form and Gibralter in 1975 and Williams Form in turn impleaded the United States of America as third-party defendant in 1978, seeking indemnity or contribution under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, et seq. The case is now before the court on the Government's motion to dismiss the third-party complaint for lack of subject matter jurisdiction, pursuant to Fed.R. Civ.P. 12(b), or alternatively, for summary judgment.

### FACTS AND PLEADINGS

For the purpose of consideration of motions under Rules 12(b) and 56, well-pleaded facts are taken as true, and the third-party complaint is construed in favor of the party opposing the motion. *Davis Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975); *Day v. UAW*, 466 F.2d 83 (6th Cir. 1972).

Plaintiffs' complaint maintains that an agent of defendant Williams Form, learning of the requirements and specifications of the Snettisham Project from the Corps of Engineers, recommended use of Wil-Kwik-Set grout and assured them the product met the Government's specifications. They subsequently purchased Wil-Kwik-Set grout and applied it to transmission tower foundation pads and used it to grout anchor rods. The grout, it is alleged, failed to set up firmly, rapidly deteriorated, became soft and wholly unfit, and had to be replaced, together with all anchor rods and rock bolts, at a total cost of $557,519.19. The complaint comprises six counts, five of which state claims against Williams for the failure of Wil-Kwik-Set grout, as follows:

Count I: Breach of an express warranty that Wil-Kwik-Set grout met all requirements for its intended use, would successfully perform when integrated into the Snettisham Project, and would withstand the Alaska weather and climatic conditions.

Count II: Breach of an implied warranty of fitness for a particular purpose, namely, use on the Snettisham Project in conformity with the requirements of the Army Corps of Engineers.

Count III: Breach of implied warranty of merchantability, namely, that Wil-Kwik-Set grout was fit for the ordinary purpose for which grout is sold.

Count IV: Negligence in the following respects:

1. Failure to test the product for the use for which intended and sold.

2. Failure to warn intended users of any limitations upon the adaptability of the product to conditions likely to be encountered by users in the position of the Plaintiffs.

3. Failure to state on the label on the container in which the product was shipped, or by the use of other available means such as circulars, advertising material, or direct communication, that the Defendants have failed to test the product or to impart notification of the limitations of the use of the product under climatic conditions likely to be incurred.

4. Failure in the formulation and production of the Wil-Kwik-Set grout, which the Defendants sold the Plaintiffs, to observe known requirements for the formulation of grout which will perform under adverse climatic conditions.

5. Defendants formulated and produced grout of a composition which the defendants knew or should have known would not perform satisfactorily in out-of-door weather.

Count V: *Res ipsa loquitur.*

Defendant Williams Form maintains, in its third-party complaint and briefs, that the Corps of Engineers had operational duties under the contract with Green-Hoak to review, and approve or reject, the designs and material proposed by the contractors and also to inspect work in progress, and in so performing, the Government assumed a duty towards Williams Form to act with reasonable care. It alleges the Corps of Engineers redesigned the anchor rod specifications, thereby requiring the grout to act as a structural bearing material as well as a sealant, and also redesigned the electrical grounding system on the transmission towers, and that these changes, together with the Corps's failure to perform its operational duties with reasonable care, caused the failure of Wil-Kwik-Set grout on the Snettisham Project.

Williams Form's third-party complaint alleges that negligent acts and/or omissions of the Corps of Engineers were the primary and active causes of the damages suffered by plaintiffs and that its liability, if any, will be only vicarious and passive. Accordingly, it seeks full indemnity from the Government. In the alternative, Williams Form alleges that negligent acts and omis-

sions of the Corps of Engineers make the Government a concurrent tortfeasor with Williams Form. Accordingly, Williams Form seeks contribution from the Corps.

## DISCUSSION

### 1. *Lack of Subject Matter Jurisdiction.*

■ The Government first moves to dismiss the third-party complaint on the ground the district court has no jurisdiction to hear a contract claim in excess of $10,-000. It maintains Williams Form's third-party complaint posits breaches of duties arising from the contract between the Corps of Engineers and Green-Hoak which can only be heard in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491. It cites *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963), where the Ninth Circuit Court of Appeals stated, at 296:

"[W]here, as in this case, an action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the Government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act."

But the Government's reliance on *Woodbury* is misplaced. As the appellate court noted, the decision does not bar a suit in district court under the FTCA merely because the relationship between the parties was originally defined by contract. Here, Williams Form argues that the wrongful acts of the Corps of Engineers are not, in *Woodbury* terms, "essentially for breaches of contractual undertakings," but rather are "essentially" tortious acts. I agree.

■ It is fundamental hornbook law, of course, that misfeasance, or negligent performance, of a contract can give rise to both a claim for breach of contract and tort liability. W. L. Prosser, *Law of Torts* (4th Ed. 1972), § 92, at 617–618. *See, Woodbury, supra* at 295. A party must perform his duties under a contract with reasonable care. If he is negligent, he may be liable in tort just as he would be for the negligent performance of a gratuitous promise on which another party has relied. This principle applies equally to the Government and

its performance of a contract. *Aleutco Corporation v. United States*, 244 F.2d 674 (3rd Cir. 1957); I Jayson, *Handling Federal Tort Claims* (1980), § 161 at 5–182—5–184.

■ The Government points out correctly that Williams Form was not a party to the contract between Green-Hoak and the Corps of Engineers. This fact, of itself, however, does not absolve the Corps of a duty to defendant. A party to a contract may be under a duty of reasonable care not only to the other signatories to the agreement, but also to third parties whose interests may be expected to be affected. Prosser, § 94, at 627. Here, a jury could readily find that the Corps of Engineers owed an implied duty of care to Williams Form when it assumed responsibility for approval of materials to be used by the contractors and for inspection of the work in process. The Government knew or should have known that Williams, as supplier of Wil-Kwik-Set grout, would be materially affected by the manner in which the product was used, a matter within the control of the Corps of Engineers and Green-Hoak. I believe an independent duty of care in the fulfillment of its contract obligations may be found to run from the Government to Williams Form.

In addition, it should be noted that not all of Williams Form's claims are derivative of the Government's contract with Green-Hoak. Williams also claims that the Government gratuitously undertook to recommend Wil-Kwik-Set grout to plaintiffs, to redesign the anchor rod and electrical grounding systems, and to inspect the work in progress. Having undertaken these tasks, the Government would owe a duty to Williams, sounding entirely in tort law, to perform them with due care. If negligent, it would be liable under the FTCA. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

Accordingly, I find that defendant's third-party complaint sufficiently states tort claims within the jurisdiction of this court under the Federal Tort Claims Act.

178

### 2. *Indemnity.*

Defendant Williams Form claims a right of indemnity against the Corps of Engineers on the theory it is only vicariously or "passively" at fault, whereas plaintiffs' damages were in fact caused by the "active" fault of the Government. Although plaintiff's complaint states claims of "active" fault against Williams Form—for breach of express warranty and negligence—it also states claims of a traditionally "passive" nature—breach of implied warranties of fitness for a particular use and merchantability—which arise solely by operation of law. *See*, Alaska Statutes (AS) 45.05.096, 45.05.098; 63 Am.Jur.2d *Products Liability*, § 110, at 115. In contrast, Williams Form's third-party complaint asserts nothing but active negligence by the Corps of Engineers.

▮ The courts have recognized that a right to indemnity may arise in a variety of ways, including by express contract, implied contract or from the relationship of the parties. In addition, the common law of many states recognizes an equitable right to indemnity when a passively negligent tortfeasor is compelled, solely through the operation of law, to pay for damages to a third person which have been primarily caused by the active negligence of another. In such cases, the active tortfeasor will be held to be the indemnifier of the passive tortfeasor. To do otherwise would be manifestly unfair. Prosser, § 51, at 310; 41 Am.Jur.2d, *Indemnity*, § 20, at 706, 708. The United States may be impleaded for indemnity under the FTCA. Jayson, § 164, at 5–216—5–217.

▮ Under the FTCA, Alaska law controls the third-party claim as "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The law of Alaska clearly follows recognized tort principles. One who assumes to act, even though gratuitously, becomes subject to a common law duty to act with care. *Adams v. State of Alaska*, 555 P.2d 235, 240 (Alaska, 1976). Negligent performance or nonperformance of a contract may give rise to tort liability. *Transamerica Title Insur. Co. v. Ramsey*, 507 P.2d 492 (Alaska, 1973). As

the product of a relatively new jurisdiction, Alaska law on the subject of common law indemnity admittedly is sparse and no case dealing directly with the "active-passive" theory of indemnity has been presented to the court by the parties. Under such circumstances, this court must use its best judgment in predicting what the state court would hold. *Tavernier v. Weyerhaeuser Co.*, 309 F.2d 87 (9th Cir. 1962). I believe that the Supreme Court of Alaska would recognize this fundamental, equitable theory. This belief is bolstered by AS 01.10.010 which states:

"Applicability of Common Law. So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state."

Additionally, the theory is widely recognized and accepted, especially by some of Alaska's closest neighboring states. *See, e. g., Fulton Insur. Co. v. White Motor Corp.*, 261 Or. 206, 493 P.2d 138 (1972); *Mauk Seattle Lumber Co. v. Hoquiam Plywood Co.*, 5 Wash.App. 577, 489 P.2d 753 (1971); *Marincovich v. Oriana, Inc.*, 13 Cal.App.3d 146, 91 Cal.Rptr. 417 (1970). As the federal district court in Alaska has noted, since 1884, when the general laws of the State of Oregon were expressly declared to be the law of the Alaska Territory, the courts of first the Territory and then the State of Alaska have considered the opinions of the Supreme Court of Oregon as being "highly persuasive". *Alaska Airlines, Inc. v. Northwest Airlines, Inc.*, 228 F.Supp. 322, 326 (D.Alaska 1964), *aff'd*, 351 F.2d 253 (9th Cir. 1965). This principle was cited with approval by the Ninth Circuit Court of Appeals as recently as 1974. *Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506, 512, fn. 11 (9th Cir. 1974).

Finally, there are suggestions in two cases that a claim for indemnity based on a common law "active-passive" theory, distinct from an express agreement, may be cognizable under Alaska law. In *Northwest Airlines, Inc.*, 351 F.2d 253, the Ninth

Circuit affirmed the district court's refusal to enforce an indemnity clause, but concluded at 258:

> "And it is, of course, not to be implied that 'Northwest' . . . is divested of rights of contribution of indemnity which it may have under proper application of general law."

And in *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973), the same appellate court reversed the Alaska District Court and permitted the Government to amend its third-party complaint for common law indemnity so as to allege "specific acts of negligence which proximately, immediately and directly caused plaintiff's injuries . . .", in contrast to the Government's own passive role. *Id.* at 1189, fn. 1.

 I conclude Williams Form's third-party complaint fairly states a claim for indemnity from the Federal Government, on grounds that are or would be recognized under the law of Alaska. It is possible that a jury may find Williams Form liable to Green-Hoak on the complaint-in-chief only on passive theories of liability, and that a jury might also find Green-Hoak's damages were proximately caused by the active negligence of the Corps of Engineers. If so, Williams would be entitled to indemnification by the United States.

### 3. *Contribution.*

 In the alternative, Williams Form claims a right of contribution from the Government as a concurrent tortfeasor, should it be found liable to plaintiffs on an active fault theory. The United States may be sued under the FTCA for contribution. *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). A right to contribution among joint or several tortfeasors is expressly provided by the Alaska Uniform Contribution Among Tortfeasors Act, AS 09.16.010(a) which states:

> "[W]here two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

The Supreme Court of Alaska recently explained:

> "The statutory right of contribution is expressly limited to the pro-rata share of the common liability and '[n]o tortfeasor is compelled to make contribution beyond his own pro-rata share of the entire liability.' [Citing AS 09.16.010(b)] In determining the tortfeasors' pro-rata shares, 'there relative degrees of fault shall not be considered;' [AS 09.16.020(1)] however, principles of equity applicable to contribution generally shall apply.' [AS 09.16.020(3)]"

*Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 430 (Alaska 1979).

 The theory of contribution differs from indemnity, which posits a duty or duties owing from the third-party defendant to the third-party plaintiff, or defendant. In contrast, contribution requires a duty from the third-party defendant to the original plaintiff. As noted, *supra*, at § 1, misfeasance in the performance of a contract may give rise to tort liability independent from liability for a breach of contract. Although briefly stated, Williams Form's third-party complaint alleges negligence by the Corps of Engineers in fulfilling its operational duties under the contract, and in gratuitously undertaking to redesign the anchor rod and electrical grounding systems, thereby making the Government jointly and severally liable in tort for plaintiffs' damages. Because a jury may readily find a duty of care running from the Government to Green-Hoak, independent of the limitations of the contract, I conclude Williams Form's third-party complaint sufficiently states a claim for contribution under the governing law of Alaska.

### 4. *Summary Judgment.*

 The Government also moves this court for summary judgment in its favor, pursuant to Rule 56. Because summary judgment operates to deny the opposing litigant its day in court, the standard which the movant must meet is a stiff one. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

The burden is on the movant to conclusively show the absence of any genuine issue as to a material fact. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Smith v. Hudson, supra.* Any doubt as to the existence of a genuine issue of material fact is resolved against the movant. *St. Paul Mercury Insur. Co. v. Huitt,* 215 F.Supp. 709, 713 (W.D.Mich. 1963).

■ In the instant case, it is clear that material facts remain in dispute. There is no agreement among the parties in this factually complex case on the issue of what caused the failure of Wil-Kwik-Set grout on the Snettisham Project. For example, was failure due to improper chemical formulation and packaging by the manufacturer, or to a failure to properly label and provide instructions by Williams Form? Or was failure due to a change in the underlying specifications by the Government, which required the product to perform under conditions for which it was not intended? Or was it due to a lack of proper supervision over the mixing and application of the grout by workmen?

■ Nor is there agreement about which parties induced reliance in the others, or which subsequent breaches of duty were due to a particular party's own negligence or to events outside his control. It is not for this court to speculate about which acts it believes are more plausible or which, if proved, would enable it to grant the Government's motion. On a motion for summary judgment, a court cannot resolve fact issues, but rather can only determine whether a triable issue exists. *Felix v. Young,* 536 F.2d 1126 (6th Cir. 1976). Because genuine issues of material fact remain in serious dispute, I hold that summary judgment on the third-party complaint is inappropriate.

### CONCLUSION

Upon due consideration, and for the reasons stated above, the court holds that the third-party complaint states claims properly within the jurisdiction of this court, and further, that summary judgment would be inappropriate at this time. Accordingly, the Government's motions are denied.