**BUILDING SERVICE EMPLOYEES PENSION TRUST, Plaintiff,**

v.

**HORSEMEN'S QUARTER HORSE RACING ASSOCIATION, et al., Defendants.**

**No. C–81–569 RPA.**

United States District Court, N.D. California.

Jan. 31, 1983.

Stephen P. Pepe, O'Melveny & Myers, Los Angeles, Cal., for plaintiff.

Paul Alexander, Heller, Ehrman, White & McAuliffe, Elizabeth G. Leavy, Carroll, Burdick & McDonough, San Francisco, Cal., for defendants.

## OPINION AND ORDER

AGUILAR, District Judge.

Plaintiff, Building Service Employees Pension Trust, alleges that defendants, Horsemen's et al, are subject to collective bargaining agreements with the Service Employees International Union. Under these agreements, plaintiff charges that the defendants have an obligation to provide plaintiff with information concerning employment of certain named individuals who are allegedly working while receiving pension funds.

One provision of the collective bargaining agreements stipulates that an employee forfeits part of his or her pension payments if he or she works more than 500 hours in a calendar year for a participating employer. The provision also requires that the employee's return to work be immediately reported to the pension trust.

Plaintiff filed this action to compel defendants to produce information and documents regarding the employment of 120 individuals who are currently receiving pension benefits.

Defendants counterclaimed that plaintiff had breached its fiduciary duty in two ways. Defendants' counterclaim raises two allegations: first that plaintiff forced defendants to make overpayments to the pension fund; second that plaintiff engages in selective enforcement of the provision regarding the work of retired employees.

Plaintiff filed its answer to defendants' counterclaim on April 6, 1982. Plaintiff's answer contained a general denial of all of defendants' substantive charges. Plaintiff did, however, admit that defendant had jurisdiction to bring its counterclaim before this Court.

Then, on August 16, 1982, plaintiff filed a motion seeking leave to amend its answer to defendants' counterclaim so that it could assert a jurisdictional defense to defendants' counterclaim. Further, in the event that the Court grants plaintiff leave to amend its answer, plaintiff moves to dismiss defendants' counterclaim for lack of subject matter jurisdiction.

Defendants oppose both of plaintiff's motions. Defendants argue that plaintiff's attempt to amend its answer is untimely and in bad faith. Defendants oppose plaintiff's motion to dismiss on the ground that the Ninth Circuit decision in *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982), specifically recognizes employers' standing to raise breaches of fiduciary duty in a counterclaim.

## DISCUSSION

*Plaintiff's Motion to Amend:*

Plaintiff no longer has the right to amend its answer to defendants' counterclaim. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may only amend its pleading by right within 20 days of the time when that pleading was served. Plaintiff filed its answer to defendants' counterclaim on April 6, 1982. Plaintiff did not seek to amend its answer to raise the jurisdictional issue until August 16, 1982. Because plaintiff's amendment comes far beyond the period for amendment by right, plaintiff seeks leave of the Court to amend its answer in order to be able to raise the jurisdictional challenge to defendants' counterclaim.

■ Rule 15(a) provides that "leave shall be freely given where justice so requires." The decision whether to grant leave is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

■ In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1967), the Supreme

Court set out the basic standard for district courts to follow in determining whether to allow a party leave to amend its pleadings.

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." 371 U.S. at 182, 83 S.Ct. at 230.

The *Foman v. Davis* factors have been consistently followed in determining whether a Rule 15(a) motion for leave to amend should be granted. *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir.1973); *See also, McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir.1982); *U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). Thus, to determine if plaintiff should be granted leave to amend its answer, the Court must compare the facts of this case with the factors enumerated by the Supreme Court in *Foman v. Davis*.

Plaintiff claims that its failure to challenge the subject matter jurisdiction for defendants' counterclaim was simply an oversight. Plaintiff further argues that the length of the delay was not so great in light of the "realities of modern litigation."

Defendants object to plaintiff's motion to amend on the grounds that plaintiff "seeks to amend for improper purposes, and has unduly delayed in doing so." Defendants' brief p. 7. Defendants assert that plaintiff waited four months to come forward with this motion and that the motion was filed only after defendants served discovery requests on plaintiff. Defendants charge that plaintiff has made the instant motion to *"avoid its obligation to respond to defendants' discovery requests."* Defendants' brief P. 8.

Defendants make a good point about plaintiff's delay in filing its motion to amend pleadings. It did take plaintiff more than four months to file its motion to amend. Nevertheless, case law and secondary authority suggest that a delay of this length is not so great as to require the Court to deny plaintiff's motion to amend.

Although delay is one of the *Foman v. Davis* factors, the Ninth Circuit has held that "the crucial factor is the . . . prejudice to the opposing party." *Howey v. U.S.*, 481 F.2d 1187, 1190. The *Howey* Court went on to say "[w]hile it is true that the motion [to amend] was made five years after the third party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend." *Id.* The Ninth Circuit recently reaffirmed its position in *Howey* stating that "leave to amend pleadings should be granted—regardless of the length of time of delay by the moving party—absent a showing of bad faith by the moving party or prejudice to the opposing party." *Roberts v. Arizona Board of Regents*, 661 F.2d 796, 798 (9th Cir.1981); *See also, Hurn v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California*, 648 F.2d 1252 (9th Cir.1981).

In addition to the question of delay, defendants raise a substantial question about the timing of plaintiff's motion to amend, suggesting bad faith on the plaintiff's part. When plaintiff finally filed its motion to amend, the filing coincided conspicuously with defendants' efforts to conduct discovery. The parties agreed that discovery would be suspended until two weeks after the Court rules on the present motions. Thus, by making the motion to amend and the motion to dismiss, plaintiff has effectively forestalled defendants' discovery.

The Court finds that plaintiff has employed very questionable tactics in timing its motion to amend to coincide with defendants' efforts to pursue discovery. Nevertheless, the Court feels constrained to grant plaintiff's motion for leave to amend. The general policy strongly favors the Court granting such motions. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Furthermore, although defendants have shown that plaintiff may have had a dilatory purpose in filing its motion, defendants have failed to

show any undue prejudice which has flowed from the delay in discovery or will flow from the Court's granting the motion to amend. Finally, the nature of plaintiff's amendment is a challenge to subject matter jurisdiction. Such challenges may be raised at any time including after judgment. *May Department Store v. Graphic Process Co.,* 637 F.2d 1211, 1216 (9th Cir.1980); 5 Wright & Miller, Fed. Practice and Procedure 544–45 ·(1969).

Therefore, even though the plaintiff has somewhat abused its privilege to amend its pleadings, the Court grants plaintiff's motion to amend its answer to defendants' counterclaim.

*Plaintiff's Motion to Dismiss:*

■ Given that the Court will allow plaintiff leave to amend its pleadings, the Court must now take up plaintiff's motion to dismiss defendants' counterclaim on the ground that the Court lacks subject matter jurisdiction. Plaintiff's basic claim is that the defendant employers lack standing to bring this counterclaim under the governing statute, the Employee Retirement Income Security Act (ERISA).

The parties agree that the Ninth Circuit's decision in *Fentron Industries,* 674 F.2d 1300 (9th Cir.1982), is the controlling authority in the case. The parties do not agree, however, on the result that *Fentron Industries* dictates.

The Ninth Circuit said that "[i]n order to have standing to sue for violations of a federal statute, a plaintiff must: (1) suffer an injury in fact; (2) fall arguably within the zone of interests protected by the statute allegedly violated; and (3) show that the statute itself does not preclude the suit." *Id.* at 1304.

Plaintiff concedes that defendants' counterclaim satisfies the first and third requirements set forth in *Fentron Industries.* Defendants have alleged that they have suffered an injury in fact. Further, nothing in ERISA precludes an action of the type filed by defendants.

Thus, the only question is whether defendants fall arguably within the zone of interests protected by ERISA, the statute allegedly violated. It is on this issue that the plaintiff and defendants part company. Plaintiff argues that ERISA is designed to protect the interests of the employee-beneficiaries, not employers. Defendants counter that ERISA is a law that protects pension plans and the relationship between employers and employees. In this respect, defendants contend, ERISA protects the interests of employers, and employers therefore have standing to bring an action under the Act.

The parties' disagreement about the application of *Fentron Industries* seems to stem from the Ninth Circuit's failure to clearly delineate the difference between the first requirement (injury in fact) and the second requirement (zone of interest). In *Fentron Industries,* the Court of Appeals found that the potential harm to the employer's relationship with the union and employees was the injury in fact. The very same potential harm also formed the basis of the Court's finding that the employer was within the zone of interest.

In *Fentron Industries,* the Ninth Circuit said that ERISA recognized that pension plans "have become an important factor affecting the stability of employment and the successful development of industrial relations." 29 U.S.C. § 1001(a). Because of this, the Ninth Circuit held that "[t]he threat to Fentron's relationship with the Union, and to the continued employment by Fentron of its employees" means that Fentron had standing to sue under ERISA. *Fentron Industries,* 674 F.2d at 1305.

Following the *Fentron Industries* reasoning in this case, defendant employers are faced with the same type of harm that befell Fentron Industries, a threat to its relationship with its employees and their union, and would therefore have standing under ERISA.

Accordingly, the Court denies plaintiff's motion to dismiss defendants' counterclaim.

IT IS SO ORDERED.