Michael L. **GRACE** and Sondra L. **Field, Plaintiffs,**

v.

Hoaliku L. **DRAKE, Chairman, Hawaiian Homes Commission; John Waihee, Governor, State of Hawaii; Warren Price III, Attorney General, State of Hawaii, Defendants.**

Civ. No. 91–00386 DAE.

United States District Court, D. Hawaii.

Nov. 21, 1991.

**1400**

Michael L. Grace, pro se.

Sondra L. Field, pro se.

Warren Price, III, Atty. Gen., HI, State Atty. Gen., Steven S. Michaels, George Kaeo, Atty. Gen., State of Hawaii, Honolulu, HI, for defendants.

*ORDER GRANTING PLAINTIFFS' MOTION TO AMEND AND/OR SUPPLEMENT PLEADINGS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

This court heard plaintiffs' motion to amend and/or supplement pleadings and defendants' motion to dismiss, or in the alternative for summary judgment on November 18, 1991. Plaintiffs appeared *pro se*. Steven S. Michaels, Esq. appeared on behalf of defendants. After reviewing the motions and the supporting and opposing memoranda and hearing oral arguments, the court grants plaintiffs' motion to amend and/or supplement pleadings and grants defendants' motion for summary judgment.

## BACKGROUND

This case involves the Anahola Beach Park, located on the island of Kauai, which is owned and managed by the State of Hawaii pursuant to section 204(2) of the Hawaiian Homes Commission Act of 1920 ("HHCA"). Plaintiffs Michael L. Grace and Sondra L. Field built a dwelling in Anahola Beach Park without permission from the State and lived there for a number of years. On June 27, 1991, the plaintiffs were served with a Notice to Vacate issued by defendant Hoaliku L. Drake, the Chairman of the Hawaiian Homes Commission. The Notice instructed all persons residing, camping, or occupying Anahola Beach Park and the surrounding Hawaiian Home lands to vacate the premises by midnight July 11, 1991. The Notice stated that noncompliance would result in arrest and prosecution for trespassing. The Notice also provided:

> all tents, shacks, dwellings, vehicles, and personal belongings placed, maintained, stored, and/or found at Anahola Beach Park and the surrounding Hawaiian Home Lands after midnight, Thursday, July 11, 1991, shall be considered abandoned and shall be disposed of by the State of Hawaii pursuant to law, at the owner's cost and expense.

Notice to Vacate (June 27, 1991), fifth paragraph (emphasis omitted).

Plaintiffs adamantly objected to the demand to vacate Anahola Beach Park. On July 8, 1991, plaintiffs filed a complaint requesting this court to issue a temporary restraining order and preliminary and permanent injunctive relief to enjoin the State of Hawaii from evicting them from Anahola Beach Park. On that same day, plaintiffs filed a petition for a writ of mandamus with the Supreme Court of Hawaii. In both of those actions, plaintiffs argued that they had title to the property in dispute pursuant to certain quitclaim deeds.[1] On July 10, 1991, the Supreme Court of Hawaii denied plaintiffs' petition for a writ of mandamus. Similarly, this court denied plaintiffs' motion for a temporary restraining order on July 11, 1991 ("TRO Order"). On July 19, 1991, this court also denied plaintiffs' motion for reconsideration.

On July 15, 1991, state officials arrested the plaintiffs for trespassing. On that same day, the officials allegedly collected, inventoried, and removed plaintiffs' personal belongings from their dwelling before removing it. On September 9, 1991, the District Court of the Fifth Circuit, State of Hawaii, entered judgments of conviction against plaintiffs on two counts each of simple trespass. Plaintiffs were each sentenced to perform thirty-five hours of community service work.

The defendants filed this motion to dismiss, or in the alternative for summary judgment on July 29, 1991. After the plaintiffs' convictions, the defendants filed on October 18, 1991 a supplemental memorandum in support of their motions. On November 1, 1991 plaintiffs filed a motion to amend and/or supplement pleadings and a memorandum in opposition to defendants' motions. On November 8, 1991 defendants filed a reply memorandum in support of motion to dismiss, or in the alternative for summary judgment and a memorandum in opposition to motion to amend and/or supplement pleadings.

## JURISDICTION

In the TRO Order, this court determined that it had subject matter jurisdiction over this case due to the federal questions involved. Specifically, plaintiffs have raised claims or issues involving 42 U.S.C. section 1983 and the Fourteenth Amendment's right to due process.

## DISCUSSION

### I. PLAINTIFFS' MOTION TO AMEND AND/OR SUPPLEMENT PLEADINGS

Plaintiffs' complaint, filed July 8, 1991, sought injunctive relief to prohibit state officials from evicting them. The relief sought in the complaint has been made moot by the events of July 15, 1991 when the plaintiffs were evicted and their dwelling was destroyed. Now plaintiffs want to amend and/or supplement their complaint. The gist of plaintiffs' motion is that they want to allege the necessary facts and legal arguments to support a claim under 42 U.S.C. section 1983 against the defendants in their individual capacities for the destruction of their dwelling in violation of the Fourteenth Amendment's due process clause. The defendants oppose any amendment or supplement to the complaint.

Amended and supplemental pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that a party may amend its pleadings by leave of the court and such leave "shall be freely given when justice so requires." Furthermore, subsection (b) of Rule 15 provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time....

With respect to events occurring subsequent to the date of filing of a pleading, subsection (d) states:

> Upon motion of a party the court may, upon reasonable notice and upon such

---

1. Plaintiffs' claim to title is based at least in part on their alleged status as citizens of the independent "Nation of Hawaii."

terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

■ The Ninth Circuit, in applying Rule 15, has recognized that "[t]he Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R.Civ.P., by freely granting leave to amend when justice so requires." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973) (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). And, while noting that the decision to grant or deny leave to amend is within the sound discretion of the trial court, the Ninth Circuit has stated that leave to amend should be freely given in the absence of prejudice to the opposing party. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983). Whether to grant or deny a motion for leave to amend is generally determined by reference to the following factors: undue delay, bad faith, futility of amendment, prejudice to the opposing party, and repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *see also Keniston*, 717 F.2d at 1300; *Howey*, 481 F.2d at 1190.

■ The record in this case establishes that all of the parties involved, as well as this court, have understood that plaintiffs assert a section 1983 claim. Although their complaint requests injunctive relief, plaintiffs did cite section 1983 as a jurisdictional ground. In light of the plaintiffs' *pro se* status, this court in its TRO Order explicitly construed plaintiffs' complaint as presenting federal questions involving 42 U.S.C. section 1983. TRO Order at 3–4. In the defendants' memoranda relating to the motions presently at issue, the defendants address the possibility of a section 1983 claim against them. *See* Defendants' Memorandum in Support of Motion to Dismiss, or in the Alternative for Summary Judgment at 11–13; Defendants' Supplemental Memorandum at 2–4. Moreover, the defendants assert that they "anticipated that Plaintiffs might seek to amend their complaint to seek damages against Defendants in their individual capacities." Defendants' Memorandum in Opposition to Motion to Amend Pleadings and in Reply in Support [sic] of Motion to Dismiss, or, in the Alternative, for Summary Judgment at 3.

The defendants offer no reason why they would be prejudiced by plaintiffs' proposed amendments. Rather, they allege only that the amendments would prolong the litigation. The rest of the defendants' opposition memorandum is devoted to explaining why plaintiffs' section 1983 claim should be denied on the merits. Due to the notice and lack of prejudice to the defendants, the events subsequent to the filing of plaintiffs' complaint, and the plaintiffs' position as *pro se* litigants, the court grants plaintiffs' motion to amend and/or supplement the pleadings to the extent that the amended complaint may allege a section 1983 claim against the named defendants in their individual capacities for the destruction of the plaintiffs' dwelling purportedly in violation of plaintiffs' constitutional due process rights. The court does this in order to allow the plaintiffs to have the full breadth of their arguments addressed in a single appeal.

## II. *DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT*

### A. *Standard of Review*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court cannot grant the motion to dismiss " 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

With respect to the summary judgment motion, summary judgment is appropriate only when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire and Cas. Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

### B. *Plaintiffs' Section 1983 Claim*

Because plaintiffs' original claims for injunctive relief are now moot, the court will address the plaintiffs' only remaining claim— the amended section 1983 claim discussed above. Pursuant to 42 U.S.C. section 1983, plaintiffs seek $100,000 in damages from the named defendants in their individual capacities for the allegedly unconstitutional destruction of their dwelling. The $100,000 amount allegedly represents $40,000 for the materials used to build the structure, $30,000 for the labor to build the structure, and $30,000 for lost compensation resulting from the plaintiffs' inability to pursue their usual occupations.

Pursuant to their section 1983 claim, plaintiffs allege that the defendants violated their constitutional rights to due process by depriving them of their dwelling without constitutionally adequate process. In support of their argument that they received inadequate process, plaintiffs rely almost entirely on

their assertion that the defendants violated Hawaii Revised Statutes section 171–31.5 relating to the disposition of abandoned or seized property. Haw.Rev.Stat. § 171–31.5 (1988). This section establishes various procedures which the state must follow when disposing of property which has been abandoned or seized on state public lands. *Id.*

■ Plaintiffs' reliance on section 171–31.5 is misplaced. First, the amount of procedural due process to which a person is entitled is a constitutional question which must be resolved by federal, not state, law. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). Second, HHCA section 206 provides that the "powers and duties of the governor and the board of land and natural resources, in respect to lands of the State, shall not extend to lands having the status of Hawaiian Home lands, except as specifically provided in this title." HHCA § 206 (1988); *see also* Hawaii Admission Act § 4 (1988). Third, section 171–2(2) expressly excludes Hawaiian Home lands from the definition of "public lands" in chapter 171 which governs the management and disposition of public lands.[2]

### C. *Procedural Due Process*

■ Regardless of the applicability of section 171–31.5, this court must determine whether plaintiffs received process sufficient to satisfy the constitutional requirements of the Fourteenth Amendment's due process clause. In *Loudermill,* the Supreme Court discussed the mandates of the due process clause: "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' "[3] *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)).

---

**2.** Nonetheless, it is not entirely clear whether the exclusion of Hawaiian Home lands from the definition of "public lands" renders section 171–31.5 inapplicable to the Anahola Beach Park. Section 171–31.5 refers to "land owned by the State," not "public lands." It is unclear whether "land owned by the State" is intended to have a different meaning from "public lands" for the purpose of section 171–31.5.

**3.** In many situations a post-deprivation hearing will satisfy due process requirements. *Loudermill,* 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7.

With respect to their alleged deprivation of property,[4] plaintiffs clearly received sufficient notice and opportunity for hearing. The Department of Hawaiian Home Lands served a Notice to Vacate on plaintiffs on June 27, 1991. The Notice stated that the plaintiffs had until July 11, 1991 to vacate the premises. The plaintiffs were not physically evicted until July 15, 1991. Thus, the plaintiffs had more than two weeks notice. Furthermore, the Notice stated that as of July 11, 1991 all dwellings maintained at the Anahola Beach Park shall be considered abandoned and shall be disposed of by the State of Hawaii pursuant to law. Therefore, plaintiffs were put on notice that they, as well as their dwelling and personal belongings, were being put at risk if they remained on the Anahola Beach Park after July 11, 1991. The plaintiffs' awareness of the possible destruction of their dwelling is acknowledged in their complaint which was filed on July 8, 1991, seven days prior to its removal. In their complaint, the plaintiffs alleged that they had suffered and "will continue to suffer extreme hardship and actual and impending irreparable loss with arrest and *destruction of our home....*" Complaint at 3 (emphasis added).

It is equally clear that plaintiffs have had ample opportunity to be heard. Plaintiffs received the following predeprivation process: (1) petition for writ of mandamus to the Supreme Court of Hawaii; (2) motion for temporary restraining order in front of this court; and (3) motion for reconsideration of order denying their motion for temporary restraining order. It is also significant that plaintiffs failed to take advantage of procedures authorized by the HHCA which allow the Department of Hawaiian Home Lands to issue permits for temporary occupancy of Hawaiian Home lands. HHCA § 204(2) (1988); Haw.Rev.Stat. § 171–55 (1988). In addition to their pre-deprivation process, plaintiffs indirectly received further process in the state trial which resulted in their trespass convictions.

In light of this court's determination that plaintiffs received adequate due process, the court need not address whether the named defendants were in fact responsible for the plaintiffs' alleged unconstitutional deprivation of property. The court also need not address whether the defendants were entitled to any type of immunity based on their official positions.

## CONCLUSION

For the reasons stated above, the court GRANTS plaintiffs' motion to amend and/or supplement pleadings and GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.

---

4. This court assumes *arguendo* that plaintiffs had a property interest in the dwelling which they erected. This court, however, notes the questionable property interest which a trespasser possesses with regard to structures illegally maintained on property owned by the State.