**FENTRON INDUSTRIES, INC., et al.,
Plaintiffs-Appellees,**

v.

**The NATIONAL SHOPMEN PENSION
FUND, et al., Defendants-Appellants.**

Nos. 81–3110, 81–3330.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided April 21, 1982.

Richard H. Robblee, Hafer, Cassidy & Price, Michael A. Patterson, Lee, Smart, Cook, Biehl & Martin, Seattle, Wash., for defendants-appellants.

Gerald M. Feder, Gerald M. Feder Law Offices, Washington, D. C., for amicus curiae.

Alan S. Levins, Littler, Mendelson, Fasitff & Tichy, San Francisco, Cal., John E. Iverson, Seattle, Wash., argued, for plaintiffs-appellees; George J. Tichy, II, San Francisco, Cal., on brief.

Before ANDERSON and ALARCON, Circuit Judges, and CRAIG,[*] District Judge.

J. BLAINE ANDERSON, Circuit Judge:

The National Shopmen Pension Fund (Fund) and its trustees appeal from summary judgment in favor of Fentron Industries,

Inc. (Fentron) and a class of its employees. The district court found that the actions of the Fund and its trustees, cancelling certain pension credits of the employees, violated various provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1381. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Fentron and Shopmen's Local Union No. 506 (Union) entered into three successive collective bargaining agreements effective from April 1, 1968 through April 1, 1977. Pursuant to the second and third agreements, Fentron contributed to the Fund on behalf of its employees from April 1, 1971 until April 1, 1977. Thereafter, the Fund refused to accept Fentron's contributions because Fentron was no longer party to a collective bargaining agreement.

At the time Fentron began contributing to the Fund, the Fund Plan (1969 Plan) provided that an employee's pension benefits become nonforfeitable (vested) upon the employee reaching age 50 and accumulating at least ten years of "Pension Credit," at least five of which are "Future Service Credits."[1] Pension Credits earned for employment while the employer contributed to the fund were denominated "Future Service Credits," and those earned for employment before the employer began contributing were denominated "Past Service Credits."[2]

In September 1976, after Congress enacted ERISA, the trustees amended the 1969 Plan. This amendment (1976 Plan) included new section 2.09 of Article II. Section 2.09 empowered the trustees to cancel cer-

---

[*] The Honorable Walter E. Craig, Senior United States District Judge for the District of Arizona, sitting by designation.

**1.** Article IV, § 7, of the 1969 Plan provided:
Vested Pension. Once an employee has accumulated 10 or more years of Pension Credit, at least 5 of which are Future Service credits, and that time [sic] is age 50 or over, he will remain entitled, following any break

in service, to all benefits provided by this Pension Plan.

**2.** Article IV, § 2, of the 1969 Plan provided:
(b) an employee who qualifies for Past Service Credit by having met the requirement of the "two year test rule" shall be given one year of Past Service Credit for each year of covered Employment prior to the Contribution Date . . . .

tain obligations of the Fund to employees whose employer withdrew from the plan.[3]

In September 1978, more than a year after the expiration of Fentron's last collective bargaining agreement, the trustees cancelled the Past Service Credits of all Fentron Employees.[4] No notice was given to Fentron or to its employees of the amendment or of the cancellation until October 1978.

In January 1979 Fentron filed a claim against the Fund and its trustees for injunctive and declaratory relief, alleging violations of ERISA and the Labor Management Relations Act, 29 U.S.C. §§ 185–186. Subsequently, a class of Fentron employees also sued, making the same allegations as Fentron and also seeking reimbursement of improperly withheld pension benefits.

The class consists of all Fentron employees who have applied for pension benefits or who have been employed by Fentron for at least ten years, five of which were during the period Fentron contributed to the Plan. It is undisputed that all members of the class were vested under the 1969 Plan. The district court certified the class and the actions were consolidated.

The district court entered partial summary judgment for the plaintiffs on January 22, 1981. The court permanently enjoined the trustees from administering the fund unlawfully, restored improperly withheld pension credits, held the trustees personally liable, and awarded attorney's fees. The court did not, however, decide the claims of two Fentron employees, the amount of the monetary award (restored benefits), or the amount of attorney's fees. The Fund alone filed a notice of appeal from this judgment on February 18, 1981 (No. 81–3110).

**3.** Article II, § 2.09 of the 1976 Plan provides:

(a) If an Employer participation in the Fund with respect to a bargaining unit or group terminates, the trustees are empowered to cancel any obligation of the Trust Fund that is maintained under the Trust Agreement with respect to that part of any pension for which a person was made eligible on the basis of employment in such a bargaining unit or group prior to the contribution period with respect to that unit or group.

Two days before the Fund filed its notice of appeal in 81–3110, the trustees timely moved for reconsideration under Fed.R. Civ.P. 59. They contested Fentron's standing to sue and their own personal liability. The district court denied the motion and granted summary judgment for the two remaining employees on May 22, 1981. No determination of the amount of the monetary award or of the attorney's fees was made. The Plan and the trustees filed a timely notice of appeal (No. 81–3330).

## II. ISSUES ON APPEAL

We address the following issues on this appeal:

(1) whether we have jurisdiction to decide these cases;

(2) whether Fentron has standing to sue the Fund for violations of ERISA;

(3) whether the employee class was properly certified;

(4) whether the Fund's cancellation of Past Service Credits improperly amended the Plan's vesting schedule under ERISA § 203(c)(1)(B), 29 U.S.C. § 1053(c)(1)(B); and

(5) whether ERISA § 404, 29 U.S.C. § 1104(a)(1)(D) imposes per se personal fiduciary liability on trustees for violations of ERISA.

## III. DISCUSSION

### A. Jurisdiction

■ The district court entered two judgments, one in January and one in June. The trustees' February motion for reconsideration, however, suspended the time for filing a notice of appeal for all parties until

Fentron and its employees argue that section 2.09 does not authorize cancellation of Past Service Credits for those employees not yet receiving pensions. Because we conclude that the trustees' action cancelling the Past Service Credits of employees vested under the 1969 Plan violates ERISA, we do not reach this issue.

**4.** The trustees also cancelled 1.6 years of Past Service Credit for pensioners. These were subsequently restored.

after that motion was denied in the June judgment. Fed.R.App.P. 4(a)(4). The June notice was therefore timely as to both the January and June orders.

The district court's January order included an injunction against the Fund and the trustees. This injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1).

■ In addition to the injunction, all of the substantive ERISA claims raised by these appeals are properly before us. 28 U.S.C. § 1292(a)(1) extends jurisdiction not only to the injunction itself, but to all the issues that underlie the order. 9 J. Moore, *Federal Practice* ¶ 110.25[1], at 270–71 (2d ed. 1980); *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1317 (9th Cir. 1981).

■ The district court's injunction orders the trustees to "properly process all pension claims of Fentron employees affected by this decree;" and enjoins the trustees from "administering the National Shopmen's Pension Fund in a manner inconsistent with this decree, ERISA, and the terms of the Plan." The order also declares section 2.09 invalid under ERISA, orders a reimbursement of pension benefits and holds the trustees personally liable.

The substantive ERISA issues implicated by the district court's rulings on section 2.09, reimbursement and personal trustee liability, underlie its decision to enjoin. Review of the injunction, therefore, necessarily involves deciding the ERISA claims, and we have jurisdiction to do so.

■ We also exercise our discretion to review the class certification and standing issues. *See Yamamoto v. Omiya.* 564 F.2d 1319, 1325 n.11 (9th Cir. 1977). Inasmuch as we consider matters related to these issues in reviewing the injunction, the interests of judicial economy are best served by broaching them now.

■ We decline, however, to review the district court's attorney's fees award. The district court has not yet determined the amount of the fees. Moreover, the challenge to the award centers on the failure of the district court to provide reasons for its decision. *See Hummell v. S. E. Rycoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980). By declining to reach this issue until the amount of the award is determined, we give the district court an opportunity to explain its ruling.

### B. *Fentron's Standing*

The district court held that Fentron had alleged sufficient injury to sue under ERISA. Specifically, the court found that the alleged interference with Fentron's collective bargaining agreement and disruption of employer-employee relations posed by the trustees action was adequate to pass constitutional muster. The court also found that Fentron's injuries fell within the "zone of interests" protected by ERISA under the test of *Data Processing Service Organization v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). We agree.

■ In order to have standing to sue for violations of a federal statute, a plaintiff must: (1) suffer an injury in fact; (2) fall arguably within the zone of interests protected by the statute allegedly violated; and (3) show that the statute itself does not preclude the suit. *Data Processing*, 397 U.S. at 153, 90 S.Ct. at 829; *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Hood River County v. United States Department of Labor*, 532 F.2d 1236, 1238 (9th Cir. 1976).

■ Fentron's alleged injuries are specific and personal. The failure of the Fund to pay pension benefits will impair Fentron's relationship with the Union. Moreover, the trustees offered to restore cancelled Past Service Credits to employees who would quit Fentron and work at least one year for a contributing employer. This provision threatens direct injury to Fentron. These are neither the general allegations of adverse impact condemned in *Natural Resources Defense Council Inc. v. EPA*, 507 F.2d 905, 908· 11 (9th Cir. 1974), nor the assertion of third party rights condemned in *Fisher v. Tucson School District*, 625 F.2d 834, 837 (9th Cir. 1980).

Fentron's alleged injuries also fall within the zone of interests that Congress intended to protect when it enacted ERISA. Section 2(a) of ERISA, 29 U.S.C. § 1001(a), recognizes that pension plans "have become an important factor affecting the stability of employment and the successful development of industrial relations," and that therefore it was desirable to enact ERISA. The threat to Fentron's relationship with the Union, and to the continued employment by Fentron of its employees, falls within this range of concerns. *See Data Processing*, 397 U.S. at 153, 90 S.Ct. at 829.

■ Finally, we do not believe that Congress, in enacting ERISA, intended to prohibit employers from suing to enforce its provisions. The omission of employers from 29 U.S.C. § 1132 is not significant in this regard.[5] There is nothing in the legislative history to suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers. *See, e.g.,* H.R.Rep.No. 1280, 93d Cong., 2d Sess. 326-328 (1974), *reprinted in* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 4593-95 (1976). In view of the intent of Congress to protect employer-employee relations, we hold that the statute does not prohibit employers from suing to enforce its provisions.[6]

## C. Class Certification

■ The district court certified the employees' suit as a class action.[7] We review this order for abuse of discretion. *James v. Ball*, 613 F.2d 180 (9th Cir. 1979), *rev'd on other grounds*, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981).

■ The Fund and its trustees claim that the employees' law suit was solicited by Fentron. They therefore urge us to reverse the certification order on public policy grounds. We decline to do so.

Although there is a general policy against the solicitation of law suits, the cases ordinarily refer to solicitation by *attorneys*, not by *parties*. *See, e.g., Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 44 (1978); *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978).

More important, we believe that decertification here would impair the associational rights of employers and employees, *see In re Primus*, 436 U.S. at 426, 98 S.Ct. at 1901, and meaningful access to the courts. *See United Transportation Union v. State Bar*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). Thus, on balance, the district court did not abuse its discretion by certifying the employee class.

## D. ERISA Violations—1976 Plan Section 2.09

The district court held that the trustees cancellation of the Past Service Credits of Fentron employees who were vested under the 1969 Plan violated ERISA §§ 203(c)(1)(B), 203(c)(1)(A), 204(g), and 302(c)(8), 29 U.S.C. §§ 1053(c)(1)(B), 1053(c)(1)(A), 1054(g), and 1082(c)(8). The court also found that, under these provisions of ERISA, section 2.09 was invalid on its face. The court concluded that section 2.09 was so susceptible of unlawful use that it was void for all purposes. For the reasons given below, we affirm this determination in part, and reverse it in part.

---

**5.** 29 U.S.C. § 1132 empowers four classes of persons to bring civil actions to enforce ERISA: (1) The Secretary of Labor; (2) "participants" in ERISA trusts; (3) "beneficiaries" of ERISA trusts; and (4) "fiduciaries" of ERISA trusts.

**6.** Fentron argues that, in any event, employers like it are not omitted from § 1132 because it is a "fiduciary." Because we decide that employers may sue notwithstanding § 1132, we do not reach this issue.

**7.** The class included:

every individual who, in or after 1969, has been an employee of Fentron Industries, Inc. ... and a participant under the National Shopmen Pension Plan and Fund, and who has applied for benefits under said Plan or who has been employed by Fentron ... for at least ten years, five of which were during the period for which Fentron ... made contributions under said Pension Plan.

**(1) Validity of section 2.09 on its face.**

 A pension plan may cancel benefits not required by ERISA's minimum vesting standards. *Hummel v. S. E. Rycoff*, 634 F.2d at 449–50 (9th Cir. 1980); *Fremont v. McGraw-Edison Co.*, 606 F.2d 752 (7th Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). Thus, to the extent that ERISA does not require Past Service Credits for employees not vested under the plan, section 2.09 is valid.

ERISA § 203(b)(1)(C), 29 U.S.C. § 1053(b)(1)(C) details what years of service *must* be credited by pension plans in determining the non-forfeitable percentage of benefits under ERISA's minimum vesting standards. That section explicitly permits the exclusion of years of service "with an employer during any period for which the employer did not maintain the plan or a predecessor plan." 29 U.S.C. § 1053(b)(1)(C).

Section 2.09, falls within ERISA § 203(b)(1)(C) to the extent that it permits the cancellation of credits of nonvested employees for employment before an employer's participation in the plan. Unlike the credits of vested employees, ERISA does not prohibit the cancellation of Past Service Credits of employees not yet vested under a pension plan. Accordingly, Section 2.09 is not invalid on its face.

**(2) Cancellation of Past Service Credits of the employee class.**

 The district court held that the cancellation of Past Service Credits of employees vested under the 1969 Plan violated ERISA § 203(c)(1)(B), 29 U.S.C. § 1053(c)(1)(B). That section provides that a plan will not meet ERISA's minimum vesting requirements if its "vesting schedule" is amended,

> unless each participant having not less than 5 years of service is permitted to elect, within a reasonable period after

adoption of such amendment, to have his nonforfeitable percentage computed under the plan without regard to such amendment.

It is undisputed that the class was vested under the 1969 Plan and that no § 203(c)(1)(B) option was offered.

The Fund and its trustees argue that the cancellation of Past Service Credits is not a "vesting schedule" amendment within the meaning of section 203(c)(1)(B). They contend that this section should not be read to prohibit the cancellation of credits not otherwise required by ERISA. We disagree.

The trustees' decision to use section 2.09 changed class members' vested benefit rights. Before the cancellation of Past Service Credits, the benefits of all members of the class were vested under the 1969 Plan. The effect of cancelling Past Service Credits was to diminish the pension credits of all members, each of whom at that time had to have Past Service Credits to qualify for pension vesting under the 1969 Plan. The cancellation thus divested previously vested employees, who then would only be eligible for vesting in the future, if at all. The trustees' use of section 2.09 was therefore a vesting schedule amendment and, in the absence of the option to compute benefits under the 1969 Plan, is prohibited by ERISA § 203(c)(1)(B).

It is of no consequence, in this regard, that the trustees' cancellation does not *directly* change the 1969 Plan vesting schedule. Admittedly, the 1976 amendments did not, by themselves, change the portion of the Plan that relates to the credits necessary for vesting. However, the trustees' action under section 2.09 did change class members' vested rights. The Fund and its trustees cannot be permitted to do indirectly what would be prohibited if done directly by changing the vesting schedule without changing the vesting provisions of the plan.[8]

---

8. Because we find the trustee cancellation of Past Service Credits unlawful under ERISA § 203(c)(1)(B), we do not reach the question whether this cancellation is also prohibited by other ERISA provisions.

### E. Per Se Personal Trustee Liability

 The district court found the trustees liable under ERISA § 409, 29 U.S.C. § 1109(a),[9] for violation of their fiduciary duty under ERISA § 404, 29 U.S.C. § 1104(a)(1)(D).[10] The court held that, insofar as the trustees had administered the plan in violation of ERISA (by cancelling the class's Past Service Credits), they had per se violated the fiduciary standards of ERISA § 404.

The trustees, contend that § 404 does not establish a per se rule of fiduciary conduct, and that Congress never intended it to do so. We agree.

 The fiduciary standards enacted by ERISA conform to the standard of care found in the Labor Management Relations Act, 29 U.S.C. §§ 185--186. *Gordon v. ILWU—PMA Benefit Funds*, 616 F.2d 433, 438 (9th Cir. 1980). Under that standard, the trustees' decision will not be overturned unless it is arbitrary and capricious. *Id.* Far from imposing per se liability, a trustee may be found to have violated his fidiciary duty only when his or her action was "made in bad faith, or upon lack of a factual foundation, or when unsupported by substantial evidence." *Tomlin v. Board of Trustees*, 586 F.2d 148, 150 (9th Cir. 1978).

Congress designed ERISA to promote pension plans and to protect their beneficiance. *Gordon*, 616 F.2d at 437. The potential burden of per se personal liability for any violation of this very complex statute might deter capable persons from serving as trustees for these plans. The continued vitality of the private pension system thus depends on the application of the traditional fiduciary standards of the Labor Management Relations Act.

### CONCLUSION

Fentron was entitled to sue for violations of ERISA, and the employee class was properly certified. Although 1976 Plan section 2.09 is not invalid on its face, the trustees' cancellation of Past Service Credits of class employees is prohibited by ERISA. Finally, ERISA does not impose a per se rule of fiduciary liability for violating its provisions.

Accordingly, the district court's judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

---

**9.** 29 U.S.C. § 1109(a) provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

**10.** 29 U.S.C. § 1104(a)(1) provides:

Subject to sections 1103(c) and (d), 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.