George **STEWART**, et al., Plaintiffs,

v.

**NATIONAL SHOPMEN PENSION FUND**, et al., Defendants.

Civ. A. No. 82–3055.

United States District Court, District of Columbia.

May 20, 1983.

Burton Fretz, Washington, D.C., Gill De-ford and Neal S. Dudovitz of the National Senior Citizens Law Center, Los Angeles, Cal., and Sharon Guida of Steinberg,

Schlachman, Potler, Belsky & Weiner, Baltimore, Md., with whom Luther Blackiston of Legal Services for Senior Citizens, Baltimore, Md., of counsel for plaintiffs.

Thomas J. Hart and Lena S. Zezulin of Lippman & Hart, Washington, D.C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This matter is before the Court on cross motions for summary judgment, which have been fully briefed and argued. Plaintiffs contend that defendants have taken actions that violate the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and which have resulted in injury to a class of pension plan participants.[1] For the reasons set forth herein, the Court will grant plaintiffs' motion for summary judgment and provide the class the relief sought.

## BACKGROUND

Plaintiff class is composed of all persons who have been or are participants in the National Shopmen Pension Plan, and who have received or are receiving benefits or whose benefit rights are or were otherwise vested under the plan, and whose past service credits have been reduced or eliminated by the Trustees as a result of their employer's or former employer's withdrawal from the Plan. However, the class does not include any individual who was a member of the class in *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) (as defined at 1305 n. 7). The class here consists of approximately 371 persons.

The named plaintiffs are two individuals—George Stewart and Lee Roy Warren—who receive a pension from defendant National Shopmen Pension Fund (the "Fund").[2] Messrs. Stewart and Warren are

---

1. The Court granted plaintiffs' motion for class certification on May 19, 1983.

2. The defendants are the National Shopmen Pension Fund and its six Trustees. The parties have stipulated that the Fund is a multi-em-

entitled to pension benefits due to their years of service with Anchor Post Building Products ("Anchor") and pursuant to Anchor's collective bargaining agreement with the Shopmen's local union. Mr. Stewart was an employee at Anchor from 1940 until 1972, when he retired. Mr. Warren worked at Anchor's Maryland plant from 1959 until 1979 when Anchor closed that plant.

Anchor joined the defendant Fund and began making contributions on behalf of its employees in 1969. At that time, Anchor's employees were granted pension credits for their years of service with their employer before joining the Fund. Thus, at the time of his retirement Stewart had 2.7 years of contributory service (service during years in which Anchor contributed to the Fund on his behalf) and 23 years of precontributory service (service before Anchor joined the Fund). Warren had 10.6 years of precontributory service and 10.4 years of contributory service.

In 1979, when Anchor closed its Maryland plant, it ceased to contribute to the Fund. As was the usual procedure when an employer withdrew from the Fund, the Trustees ordered that an actuarial study be performed to determine the effect of the withdrawal upon the Fund. The study disclosed that Anchor's withdrawal "dumped" $750,000 of liability on the Fund. The study suggested that the Fund cancel all precontributory service credit given to Anchor employees in order to decrease this liability. The cancellation would not completely deprive any recipient of vested pension rights but it would decrease the amount of the pensions due to employees who had precontributory credit. The Trustees adopted the study's suggestion and cancelled all precontributory credit. They did so pursuant to § 2.09 of the National Shopmen Pension Plan.[3]

As a result of the Fund's decision, Mr. Stewart's pension was reduced from $80/month to $9/month. Mr. Warren's pension suffered a reduction from $89.50/month to $45/month. Plaintiffs both appealed the decisions regarding their pensions to the Trustees of the Fund, but both appeals were denied. Consequently, plaintiffs filed this suit challenging the decision of the Fund's Trustees to cancel precontributory credit. Plaintiffs allege that the Trustees decision: 1) violated the vesting and nonforfeiture provisions of § 203 of ERISA; 2) violated § 203(c)(1)(B) of ERISA which provides that vesting schedule amendments trigger the right to choose to have benefits calculated under a Fund's pre-amendment plan;[4] 3) constituted a decrease in their accrued benefits in violation of § 204(g) of ERISA; 4) was arbitrary and capricious in violation of ERISA's "sole and exclusive benefit" requirement; and 5) conflicted with the Plan's general vesting and nonforfeiture rules. Because the Court agrees with the second and third of plaintiffs' arguments, it need not reach the remainder of plaintiffs' contentions.

## I

### THE TRUSTEES' CANCELLATION OF THE PRECONTRIBUTORY CREDITS OF POST–ERISA PARTICIPANTS IS INVALID BECAUSE IT VIOLATES THE REQUIREMENTS OF ERISA § 203(c)(1)(B).

Under ERISA § 203(c)(1)(B), 29 U.S.C. § 1053(c)(1)(B), if a plan is amended so as to change its vesting schedule, participants with at least five years of service must be permitted to elect to have their benefits calculated under the pre-amendment plan. It has been stipulated that the Trustees did not view their application of

---

ployer pension plan within the meaning of ERISA. 29 U.S.C. §§ 1002(2) and (37)(A).

**3.** The Fund has operated pursuant to two different plans. When Anchor joined the Fund, the first plan (the "1969 plan") was in effect. In 1976, the plan was modified in response to the enactment of ERISA. It is this second plan

(the "1976 plan") that contains § 2.09 the provision at issue here.

**4.** The term "pre-amendment plan" refers to the 1969 plan i.e., the original plan which was amended upon the passage of ERISA. The term is, therefore, synonymous with "pre-ERISA plan".

§ 2.09 to cancel precontributory credits as a plan amendment changing the vesting schedule and therefore did not allow plan participants to exercise the option mandated by § 203(c)(1)(B). Thus, the only question is whether the Trustees' action constituted such an amendment. If the Court finds that the Trustees' action did constitute such an amendment, § 203(c)(1)(B) will clearly render their action invalid.

A plan's vesting schedule delineates the timetable by which a participant's benefits will become vested i.e. nonforfeitable. The vesting schedule in the National Shopmen Pension Plan provided that benefits were to be nonforfeitable after 10 years of service. The Trustees contend that because they did not officially change this schedule, the action they took pursuant to § 2.09 was not a vesting schedule amendment. However, because the effect of defendants' actions was to alter the vested benefits of the plaintiffs, the Court holds that these actions do constitute a change in vesting schedule.

■ This issue was addressed by the Ninth Circuit in *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982).[5] Dealing with the same plan at issue here and similar actions by the Trustees, the Circuit Court concluded that it was irrelevant "that the trustees' cancellation [did] not *directly* change the 1969 Plan vesting schedule ... [so long as the cancellation] did change class members' vested rights." *Id.* at 1306. As stated by the *Fentron* court: "The Fund and its trustees cannot be permitted to do indirectly

what would be prohibited if done directly by changing the vesting schedule without changing the vesting provisions of the plan." *Id.*

■ Defendants' primary defense to plaintiffs allegations is that their decision to cancel precontributory service credits is specifically authorized by ERISA and therefore could not possibly be in violation of that Act. Defendants find this authorization in § 203(a)(3)(E) which provides that:

A right to an accrued benefit derived from employer contributions under a multiemployer plan shall not be treated as forfeitable solely because the plan provides that benefits accrued as a result of service with the participant's employers before the employer had an obligation to contribute under the plan may not be payable if the employer ceases contributions to the multiemployer plan.

However, this provision does not do what defendants claim that it does—it does not validate all cancellations of precontributory credits. Rather, this section merely states that such cancellation will not violate the nonforfeitability provisions of ERISA. Accordingly, § 203(a)(3)(E) has no bearing on the Court's conclusion that the Trustees' action constituted a vesting schedule amendment that triggers the right of participants to have their benefits calculated under the pre-amendment plan.

■ The Court's holding that Fund participants have the right to have their benefits calculated under the pre-amendment

---

**5.** Plaintiffs argue that the issues in *Fentron* are identical to those presented here. Accordingly, plaintiffs contend that the Ninth Circuit's holding for plaintiffs in *Fentron* collaterally estops defendants from arguing that their cancellation of precontributory service credits did not violate § 203(c)(1)(B) of ERISA. The Court declines to apply estoppel because it finds that a significant factual difference between these cases renders the case at bar sufficiently different to demand individual consideration. *See Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) (collateral estoppel should not be applied where controlling facts have changed significantly).

In *Fentron,* the Trustees applied § 2.09 to cancel all precontributory service credits not

only for purposes of calculating benefits, but also for purposes of vesting requirements. After the *Fentron* court determined that cancellation of precontributory credits in such a manner as to divest previously vested employees was improper, the Trustees altered their position and only applied cancellation for purposes of calculating the amount of benefits. Here the question is whether cancellation of past service credits resulting in reduction (but not divestment) of benefits triggers the option provided by § 203(c)(1)(B). The issues *Fentron* decided are not, therefore, sufficiently similar to satisfy the requirements of collateral estoppel, although *Fentron* does provide substantial guidance in addressing the questions presented in this case.

plan is not, however, applicable to all members of the plaintiff class. It has been widely held that § 203 of ERISA only applies to those individuals who were *employees* on January 1, 1976, the effective date of that section. *See, e.g., Cohen v. Martin's* 694 F.2d 296 (2d Cir.1982); *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 755 (7th Cir.1979) *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). The plaintiff class here consists of some individuals whose benefits were fully vested or who were actually receiving benefits, but who were not actively employed on the relevant date. Although the Court's ruling relying on § 203(c)(1)(B) cannot apply to these employees, there is an additional provision entitling these pre-ERISA beneficiaries to relief.

## II

### THE TRUSTEES' CANCELLATION OF PRECONTRIBUTORY CREDITS FOR ALL PARTICIPANTS IS INVALID BECAUSE IT VIOLATES THE REQUIREMENTS OF ERISA § 204(g).

ERISA § 204(g) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment to the plan [unless the plan administrator files a notice with the Secretary of Labor and the Secretary approves such amendment]." 29 U.S.C. §§ 1054(g) & 1082(c)(8). The parties have stipulated that the Trustees did not believe their actions were governed by § 204 and therefore did not seek the approval of the Secretary. However, the Court finds the Trustees' disregard of § 204 to be improper.

It is indisputable that the Trustees' action here decreased the accrued benefits of all members of the plaintiff class.[6] Further, the Court holds, pursuant to the same reasoning employed to find an amendment in the vesting schedule, that this reduction in benefits was the result of a plan "amendment." The Trustees cannot be allowed to do indirectly—by applying § 2.09 to decrease benefits—what they are forbidden to do directly—by passing an amendment accomplishing the same end. *See Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300, 1306 (9th Cir.1982).

Moreover, the Court holds that § 204 of ERISA, unlike § 203, applies to both pre-ERISA and post-ERISA plan participants. It appears that the question of whether § 204 should apply to pre-ERISA employees is one of first impression. While there are several cases holding that ERISA should not be applied retroactively, these decisions have generally confined their holdings to § 203 (ERISA's vesting requirements) and have relied upon the distinction in the Act between "participants" and "employees."[7] *See, e.g., Cohen v. Martin's,* 694 F.2d 296 (2d Cir.1982); *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 755 (7th Cir.1979) *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). However, this distinction leads to a contrary interpretation of § 204.

In assessing the applicability of ERISA's provisions, it is important to recognize the Act's distinction between "employees" and "participants." ERISA defines the term "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). By contrast, an "employee" is defined as "any individual em-

---

**6.** By definition, the plaintiff class is composed of individuals whose benefits were reduced when their pre-contributory service credits were cancelled.

**7.** Several of these cases contain some broad language noting that ERISA is not to be given retroactive application. *See, e.g., Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 657 (9th Cir.1981). The Court notes that recognizing the rights of pre-ERISA retirees under § 204 of the Act does not conflict with this language. Under § 204, the accrued benefits of participants are not to be decreased unless special permission is obtained. Since pre-ERISA retirees are participants who are being deprived of their benefits in violation of this provision, they must have standing to challenge this action. In so doing, they invoke ERISA to challenge actions taken long after the Act's effective date. Accordingly, the Act is not given retroactive application.

ployed by an employer." 29 U.S.C. § 1002(6). Thus, plaintiff Stewart and all class members who were receiving benefits but were no longer employed by their contributing employer at the effective date of ERISA qualify as participants under the Act but not as employees.

The section of ERISA at issue here, § 204, specifically addresses the benefits of *participants.* This is in direct contrast to § 203 which speaks to the rights of *employees.* The Court concludes, relying upon this distinction, that § 204 applies to both pre-ERISA and post-ERISA retirees and thus to the entire plaintiff class, even though § 203 does not.

An Order in accordance with the foregoing will be issued of even date herewith.

### ORDER

Before the Court are plaintiffs' Motion for An Order Certifying the Class, defendants' opposition thereto, and the entire record herein. Plaintiff seeks to certify a class under Fed.R.Civ.P. 23(b)(2) composed of all participants in the National Shopmen Pension Plan who have received or are receiving benefits or whose rights are or were otherwise vested under the plan, and whose past service credits have been reduced, eliminated, or otherwise not counted by the Trustees as a result of their employer's or former employer's withdrawal from the Fund, and who were not members of the plaintiff class in *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) as defined at 1305 n. 7.

Defendant does not contest plaintiffs' satisfaction of two of the requirements of Rule 23(a)—numerosity and commonality. Furthermore, it is clear that plaintiffs do meet these requirements: the class will consist of 371 individuals joined by the common fact that they were all deprived of past service credits by defendants upon the withdrawal of their employer from the defendant Fund. The Court finds that plaintiffs also meet the remaining two requirements of Rule 23(a)—typicality and adequacy.

Plaintiffs' claims are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *EEOC v. Printing Industry,* 92 F.R.D. 51, 54 (D.D.C.1981). Here, plaintiffs rely on the same legal arguments and the plaintiff class is by definition composed of those individuals to whom defendants applied their policy of cancelling past service credits upon withdrawal of their employer from the Fund. Accordingly, the named plaintiffs' claims arise from the same practice to which the entire class was subjected and therefore their claims are typical.

The requirement of adequacy is met if: 1) there are no conflicting interests between the named plaintiffs and the class members and 2) the representative plaintiffs appear able to vigorously pursue the interests of the class through qualified counsel. *National Association of Regional Medical Programs v. Mathews,* 551 F.2d 340, 345 (D.C.Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). It is incontestable that plaintiffs and their counsel have demonstrated their ability to vigorously prosecute this action. Accordingly, defendants attack the first of the adequacy criteria, contending that plaintiffs cannot adequately represent the class because the resolution of their claims is tied to the specific facts of the withdrawal of their individual employer. While it is true that some of the facts surrounding the withdrawal of each employer will differ, defendants have demonstrated no reason why the variations in these facts will render the interests of the named plaintiffs antagonistic to those of the class. The Court finds that plaintiffs' interests do not conflict with those of the class and believes that plaintiffs will be adequate class representatives. Thus, all four requirements of Rule 23(a) have been met.

Defendants additionally argue that plaintiffs have not met the criteria of Rule 23(b)(2) which require plaintiffs to show that the defendants have "acted or failed to act on grounds generally applicable to the class." This argument has already been

disposed of above where the Court notes that the issue in this litigation is whether the Fund Trustees could validly cancel the precontributory credits of employees of withdrawing employers. Thus, plaintiffs are specifically challenging the actions of the defendants toward the whole of the plaintiff class and this challenge meets the requirements of Rule 23(b)(2).

Accordingly, it is, by the Court, this 19th day of May, 1983 hereby,

ORDERED that the plaintiff class defined in this Order is certified under Fed. R.Civ.P. 23(b)(2). Because the class is certified under Rule 23(b)(2) no notice will be required.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date herewith, it is, by the Court, this 19th day of May, 1983, hereby

ORDERED that plaintiffs' motion for summary judgment is granted and defendants' motion for summary judgment is denied; and it is further

ORDERED that the Trustees' application of § 2.09 of defendant's 1976 Plan to the plaintiff class is declared invalid because it violated § 203(c)(1)(B) and § 204(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1053(c)(1)(B) & 1054(g); and it is further

ORDERED that defendants, their successors, agents, employees and all persons acting in concert with them are enjoined from, applying § 2.09 of the Plan (or any other comparable provision) or from otherwise administering the plan, in a manner inconsistent with the Court's Memorandum Opinion; and it is further

ORDERED that defendants, their successors, agents, employees and all persons acting in concert with them are enjoined from denying, cancelling or otherwise not counting, and from continuing to deny, cancel or otherwise not count, the precontributory credits of all members of the plaintiff class, with the result that their vested benefits are and have been calculated at a lower amount than that to which they are otherwise entitled; and it is further

ORDERED that defendants immediately restore the past service credits previously withdrawn, cancelled, or otherwise not counted to plaintiff class members; and it is further

ORDERED that defendants immediately calculate the benefits to which plaintiffs are entitled based on all the credits which they have earned, including those which are hereby restored, and that defendants pay all future monthly benefits based on those calculations beginning with the first pension payment due to be mailed out, but in no event less than fifteen (15) days or more than forty-five (45) days from the date hereof; and it is further

ORDERED that within thirty (30) days from the date hereof defendants calculate the past benefits to which plaintiff class members are entitled based on the restored precontributory credits and reimburse class members in lump sum checks for the difference between that to which they were entitled and that which they received, including legal interest from the dates on which the incorrect payments were made.