955 F.2d 48
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lewis SNODGRASS; Ruth Snodgrass, husband and wife, and
their marital community; David Muller; Barbara Muller,
husband and wife, and their marital community; Wes
Rossiter; Sue Rossiter, husband and wife, and their marital
community; Rudy Derrah, a single man, Plaintiffs-Appellees,
v.
SIMPSON TIMBER COMPANY, a corporation; Simpson Investment
Company, a corporation; Thomas R. Ingham, Jr.,
Defendants-Appellants.
 No. 90-35503.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1991.
Decided Feb. 20, 1992.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Simpson Timber Company ("Simpson") appeals from the judgment and the award of attorneys' fees in this action for employees' severance pay based upon the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1988). Simpson contends that plaintiff employees were ineligible for severance benefits under the company severance pay plan. We agree and reverse.
 
 
 3
 * Simpson owned two door manufacturing plants in Vancouver, Washington. Simpson announced to its employees in early 1987 that it was attempting to sell the plants. On May 11, 1987, Simpson accepted an offer to buy the plants from Jeld-Wen, Inc. Simpson had an established severance policy for salaried employees in effect at that time and it was published in its Management Guide. Under section 1.05, "[e]mployees offered continued employment with ... a successor company in a comparable position at a similar pay level" would not receive severance pay.
 
 
 4
 Simpson announced the sale to its employees on May 19, 1987, and circulated several memoranda over the next few days from President Ingham ("Ingham memoranda") explaining severance benefits to its employees, which allegedly varied from the Management Guide provisions.
 
 
 5
 The plaintiffs in this action are former Simpson employees who were terminated and transferred to Jeld-Wen after the sale. Simpson had paid the plaintiffs a straight salary but Jeld-Wen offered a lower base pay with three possible bonus plans based on company profitability, division profitability, and plant productiveness. The salaried employees who were hired by Jeld-Wen were offered the option of continuing their Simpson pay scale for seven months from their transfer of employment until the end of 1987.
 
 
 6
 Simpson paid severance benefits to employees who were terminated but not employed by Jeld-Wen. Plaintiff employees transferred, without missing a day of work, to Jeld-Wen at a lower base pay, but they were eligible for incentive pay plans and were not given severance pay.
 
 
 7
 The district court found that the Management Guide and the Ingham memoranda were inconsistent. The court concluded, without stating a reason, that because of the conflict it would look only to the Management Guide. The court further concluded that the plaintiffs were not hired by Jeld-Wen "in a comparable position at a similar pay level" because of the 12-22% pay cuts in base salary the plaintiffs ultimately suffered. Consequently, the court ruled that the plaintiffs should have been granted severance pay.
 
 
 8
 We review de novo the question of whether Simpson's benefit plan complied with ERISA. Williams v. Caterpillar, Inc., 944 F.2d 658, 661 (9th Cir.1991). More specifically, we must decide whether ERISA prevents an employer from amending or abolishing an established severance pay plan.
 
 II
 
 9
 ERISA delineates two subspecies of employee benefit plans: "pension benefit plans" and "welfare benefit plans." The distinction is important in this case because ERISA is primarily concerned with correcting "defects in the private retirement system" and in protecting "individual pension rights." H.R.Rep. No. 533, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639.
 
 
 10
 Severance pay plans are "employee welfare benefit plans" as defined by ERISA and recognized by case law. "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan ... established or maintained by an employer ... for the purpose of providing for ... benefits in the event of sickness, accident, disability, death or unemployment ... or (B) any benefit described in section 186(c) of this title...." 29 U.S.C. § 1002(1). Section 186(c)(6) of Title 29, specifically lists severance benefits. See also Massachusetts v. Morash, 490 U.S. 107, 113 & n. 8 (1989); Orozco v. United Air Lines, Inc., 887 F.2d 949, 952 (9th Cir.1989); Blau v. Del Monte Corp., 748 F.2d 1348, 1352 (9th Cir.1984), cert. denied, 474 U.S. 865 (1985).
 
 
 11
 ERISA, in keeping with its emphasis on "pension benefit plans," does not require vesting or funding of "employee welfare benefit plans." 29 U.S.C. §§ 1002(1), 1051(1), 1081(a)(1); Morash, 490 U.S. at 113, 119; Blau, 748 F.2d at 1352 ("Neither the vesting and participation requirements nor the funding requirements of ERISA apply to employee welfare benefit plans such as severance plans....").
 
 
 12
 Congress clearly expressed its intent that ERISA was to provide for and to protect pension and retirement benefits. 29 U.S.C. §§ 1002(2)(A), 1051-1061, 1081-1086. Congress protected such plans as accrued benefits by requiring funding and vesting. Id.; S.Rep. No. 383, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4935. However, Congress also recognized that strict requirements regarding ancillary benefits, such as medical or life insurance on pension plans, or in this case severance pay, could inhibit the voluntary development of pension plans. "To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." Id. at 4935. See also H.R.Rep. No. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4726.
 
 
 13
 In light of the statutory language and Congress' intent, we have previously acknowledged that there is no ERISA requirement to vest in employees a right to severance pay. West v. Greyhound Corp., 813 F.2d 951, 954 (9th Cir.1987); Turner v. Local Union No. 302, Int'l Bhd. of Teamsters, 604 F.2d 1219, 1225 n. 5 (9th Cir.1979). "Vesting refers to the nonforfeitable right of interest which an employee participant acquires in the pension fund." H.R.Rep. No. 533, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4643.
 
 
 14
 Thus, an employee does not possess nonforfeitable rights in severance pay. An employer can alter or abolish unvested benefits without violating ERISA. "A pension plan may cancel benefits not required by ERISA's minimum vesting standards." Fentron Indus. v. National Shopmen Pension Fund, 674 F.2d 1300, 1306 (9th Cir.1982) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 449-50 (9th Cir.1980)). Severance pay plans are employee welfare benefit plans, which do not vest under ERISA, and an employer can amend or abolish unvested benefits at any time. See Fentron Indus., 674 F.2d at 1306.
 
 
 15
 Consequently, the district court erred in disregarding the Ingham memoranda and any purported amendment of the Simpson severance pay plan in upholding plaintiffs' severance pay claim. The Ingham memoranda cannot be ignored even if they were amendments of the severance plan and inconsistent with the earlier Management Guide. Simpson had the right to alter an unvested welfare benefit plan at any time. The severance benefit plan Simpson offered its employees in the Ingham memoranda excluded the plaintiffs from eligibility for severance pay because they accepted a job with Jeld-Wen and were eligible for incentive pay plans. Because Simpson did not violate ERISA, the district court judgment for the plaintiffs must be REVERSED.
 
 
 16
 All parties will bear their own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3